823 So.2d 568 (2002)
Matthew Ray MITCHELL, Appellant,
v.
Janet Blossman MITCHELL, Appellee.
No. 2001-CA-00967-COA.
Court of Appeals of Mississippi.
May 21, 2002.
Rehearing Denied July 30, 2002.
*569 Paul Hardin Holmes, Petal, Sheila Havard Smallwood, attorneys for appellant.
Richard C. Fitzpatrick, Poplarville, attorney for appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.
BRANTLEY, J., for the court.
¶ 1. Janet Mitchell was granted a divorce from Matthew Mitchell in a Pearl River County Chancery Court on the ground of habitual cruel and inhuman treatment. Matthew appeals, arguing that the court erred in granting Janet the divorce, in awarding visitation, in the division of property and in awarding attorney's fees. Finding that the chancellor did not err in his decision, we affirm.

*570 FACTS
¶ 2. Matthew and Janet Mitchell were married on February 13, 1993. The parties had three children born during their marriage. Following their marriage, the couple resided in Pearl River County in a home located on eighty acres owned by Matthew's parents.
¶ 3. Janet testified that she did not graduate from high school, but received her GED certification. She stayed at home caring for their children, in addition to other family members' children. After the parties' final separation in July of 2000, Janet lived with her mother. She worked as a housekeeper for a doctor who permitted Janet to take her two youngest children with her to work, earning $879 per month. Janet does not pay rent to her mother, but pays the electric and phone bill, while her mother helps her in providing food. During the marriage, the Mitchells purchased a van for Janet's use in taking care of the children.
¶ 4. Janet further testified that she was left alone all the time with the children and spent most evenings with her parents due to Matthew not being at home. Janet's parents regularly assisted her financially. Additionally, Matthew on several occasions questioned the paternity of the two younger children.
¶ 5. Matthew testified that he finished high school. He has had several jobs in the past in real estate, in livestock activities and in the restaurant business. At the time of the hearing, Matthew worked for Southern Livestock Producers as a manager of its cattle auction, netting $2,022 per month. Matthew continued to live, rent free, in the home on his parents' property.
¶ 6. The parties have been separated three times, with the final separation in July of 2000. Janet filed for a divorce on the ground of habitual cruel and inhuman treatment. Matthew filed an answer and counter-claim for separate maintenance. A hearing was held on January 24, 2001. The chancellor granted Janet a divorce. In addition, he awarded the Mitchells joint legal custody with primary physical custody of the children awarded to Janet along with monthly child support payments. The chancellor awarded Janet the use of the van and ordered Matthew to pay the amounts due on the van each month as alimony. Matthew was also ordered to pay Janet $500 in attorney's fees.

DISCUSSION OF THE ISSUES

STANDARD OF REVIEW
¶ 7. This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact. Pearson v. Pearson, 761 So.2d 157, 162(¶ 14) (Miss.2000). The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony. Id. This Court views the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancery decision unless this Court finds it manifestly wrong or unsupported by substantial evidence. Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000).

I. WHETHER THE CHANCELLOR ERRED IN GRANTING A DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.
¶ 8. Habitual cruel and inhuman treatment must be established by a preponderance of the evidence, rather than clear and convincing evidence. Richard v. Richard, 711 So.2d 884, 888(¶ 14) (Miss. 1998).
Evidence sufficient to establish habitual, cruel and inhuman treatment should prove conduct that: either endanger[s] *571 life, limb or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief or, in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending[ed] spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.
Fisher, 771 So.2d at 367 (¶ 9) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss. 1993)). However, there must be more than a showing of unkindness or rudeness or mere incompatibility or want of affection. Daigle, 626 So.2d at 144.
¶ 9. The chancellor must evaluate not only the conduct of the offending spouse, but also the impact of that conduct upon the other spouse. Bias v. Bias, 493 So.2d 342, 345 (Miss.1986). The negative impact upon the complaining spouse may be to their mental health, not just physical health. Rakestraw v. Rakestraw, 717 So.2d 1284, 1288(¶ 11) (Miss.Ct.App.1998). Physical violence or threats of physical violence are not necessary to prove habitual cruel and inhuman treatment. Richard, 711 So.2d at 889(¶ 9). Acts, short of physical cruelty, "such as wilful failure to support, verbal abuse, neglect, and the like which, if taken alone will not constitute cruelty, but when taken together will manifest a course of conduct as a whole which may amount to cruelty." Savell v. Savell, 240 So.2d 628, 629 (Miss.1970).
¶ 10. Matthew contends that his wife failed to present sufficient testimony and evidence to show that she was entitled to a divorce on the ground of habitual cruel and inhuman treatment. However, the chancellor found that Matthew's behavior during their marriage did constitute habitual cruel and inhuman treatment. This was not a case of physical violence, but a case of mental cruelty.
¶ 11. Janet testified that she was left alone all the time with the children. When Matthew was at home, he rarely spent any time with her or the children. Janet and the children spent most evenings having dinner with her parents due to Matthew not being at home. Matthew kept all the financing problems or issues from Janet. There were times that the phone or electricity were cut off for failure to pay. Janet's parents would regularly assist Janet financially by paying for the necessities that Matthew would not provide. Additionally, Matthew questioned the paternity of the two younger children several times, although he told Janet a few weeks prior to the hearing that he was only joking. Janet stated that she felt alone and depressed all the time.
¶ 12. During their marriage, Janet separated from Matthew and went to live with her parents with the children. The first separation lasted for several months. At this time, Janet sought counseling for the psychological stress caused by the marriage. She was given a prescription for antidepressant medication that she continued to take until July of 2000. Matthew promised to seek counseling with Janet and to discontinue his behavior that was causing her stress. However, once Janet returned the behavior continued. A second separation occurred which did not last as long as the first, but Janet returned again after Matthew promised to change his behavior. Nevertheless, Matthew's behavior did not change causing the continual emotional stress to become so unbearable that Janet left for the final time. Janet testified that after the final separation, her mental well-being has improved to such an extent that she no longer needs the medication.
¶ 13. Janet's testimony was corroborated by her sister and mother. The chancellor placed great weight on their testimony *572 due to their professional training. Janet's mother had fourteen years of experience as a psychiatric nurse. She testified that Janet was depressed and that she had paid for the counseling sessions as long as she was financially able to assist Janet. She stated that her daughter had a dysfunctional marriage. In addition, her sister testified to Janet's depression and sadness. Her sister is a social worker. She stated that Janet no longer acted like herself.
¶ 14. Matthew's conduct was habitual and continuous over a period of time which was sufficient to satisfy the requirements for a divorce on the ground of habitual cruel and inhuman treatment. Thus, the chancellor was not in error.

II. WHETHER THE CHANCELLOR ERRED IN REDUCING MATTHEW'S VISITATION.
¶ 15. Matthew argues that the court erred in reducing his visitation in the final order from the temporary order. However, no authority was cited in support of this assignment of error. This Court is not required to address any argument which is not supported by authority. Hankins v. Hankins, 729 So.2d 1283, 1286(¶ 11) (Miss.1999). See also Grey v. Grey, 638 So.2d 488, 491 (Miss.1994). Therefore, we will not address this issue.

III. WHETHER THE COURT ERRED IN DETERMINING THE OWNERSHIP AND PAYMENT OF THE VAN.
¶ 16. Matthew argues that the chancellor erred in awarding the use of the van to Janet while requiring him to make the monthly payments until the van was paid in full. He contends that the chancellor failed to consider the factors set forth in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), concerning the distribution of marital property. However, Janet argues that the court awarded the use of the van to her and the payment obligation to Matthew as alimony.
¶ 17. No significant marital property was accumulated during the marriage. Matthew and Janet lived in a home that was owned by Matthew's parents on eighty acres of property that was owned by Matthew's parents. The only marital property was a truck, van and miscellaneous furnishings. The chancellor awarded the marital property to whom had possession of the property at the time of the order. Therefore, the truck was awarded to Matthew and the van to Janet. In Janet's petition for divorce, she asked to be awarded the amount due on the van and the use of the van. The Ferguson factors were inapplicable to this case because there was so little marital property.
¶ 18. The chancellor ordered Matthew to pay the amount due on the van until paid in full as non-dischargeable support, not as part of the division of marital property. This amount was awarded as rehabilitative alimony to assist Janet in her plans to return to school. Rehabilitative alimony has been recognized in this State. Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). In Hubbard, the court stated that this type of alimony was to provide some measure of support to a spouse "needing assistance to become self-supporting without becoming destitute in the interim." Id.
¶ 19. The Mississippi Supreme Court has held that the following factors are to be considered by the chancellor in arriving at findings and entering judgment for periodic alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;

*573 4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992); Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The chancellor clearly examined the parties' ages, needs, earning capacity and other factors, including the fact that Matthew had failed to file tax returns for several years making it difficult to truly determine his earning capacity. These findings of fact address the Armstrong factors, indicating that the chancellor took them into consideration in determining whether and how much alimony Janet should receive. We will not reverse the chancellor's decision to award Janet rehabilitative alimony.

IV. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES.
¶ 20. Janet testified that she owed approximately $750 in attorney's fees that she was unable to pay. The chancellor ordered Matthew to pay $500 to Janet for attorney's fees. Matthew appeals this award arguing that the chancellor failed to consider the appropriate factors.
¶ 21. A chancellor's decision to award attorney's fees is within his discretion. Grogan v. Grogan, 641 So.2d 734, 744 (Miss.1994). "Attorneys fees are appropriate only where a party is financially unable to pay them." Monroe v. Monroe, 745 So.2d 249, 253(¶ 18) (Miss.1999). Here, the chancellor found that Janet was without adequate funds to pay her attorney's fees.
¶ 22. This Court has stated that "where the only liquid asset is the alimony award and the party seeking fees has otherwise demonstrated an inability to pay the fees, a reasonable award is appropriate, providing the McKee factors, regarding inability to pay, the skill of the attorney, the nature and novelty of the case, usual fees for similar cases of a similar character are satisfied." East v. East, 775 So.2d 741, 745(¶ 16) (Miss.Ct.App.2000) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)).
¶ 23. In this case, the chancellor only stated that Janet was unable to pay the fees and awarded her $500 without specifically mentioning the McKee factors. However, this Court has held that failure to address the McKee factors is not necessarily a cause to reverse the award. Wells v. Wells, 800 So.2d 1239, 1246(¶ 18) (Miss.Ct. App.2001). In Wells, this Court found that even though the chancellor did not state anything more than that the party was unable to pay, that when the Court reviewed the evidence of the financial status of each party, the award of attorney's fees was not an abuse of discretion. Id.
¶ 24. We find that the chancellor did evaluate the financial status of both parties and found that Janet was unable to pay. In addition, Janet's only liquid asset is her small monthly salary. Her alimony is the amount due on the van. From the record it is readily apparent that Janet had no funds to enable her to pay the attorney's *574 fees, therefore the chancellor's award of attorney's fees was not an abuse of discretion.
¶ 25. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.