839 So.2d 565 (2003)
Matthew REED, Appellant,
v.
Gloria REED, Appellee.
No. 2001-CA-01363-COA.
Court of Appeals of Mississippi.
March 4, 2003.
*567 Marvin E. Wiggins, DeKalb, attorney for appellant.
Helen J. McDade, DeKalb, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. This is a divorce action brought by Gloria Reed against Matthew Reed on the grounds of habitual, cruel and inhuman treatment or, in the alternative, irreconcilable differences. The chancellor granted her a divorce on the grounds of habitual, cruel and inhuman treatment. Feeling aggrieved, Matthew appeals. He first argues that the chancellor created manifest error by incorrectly assessing the facts when granting Gloria a divorce on the grounds of habitual, cruel and inhuman treatment. Secondly, he states the chancellor erred in not considering all the factors in Armstrong before granting periodic alimony. Finally, he contends that the chancellor erred in not considering all of the Ferguson factors before dividing the marital assets. We find the chancellor manifestly in error in granting the divorce on grounds of habitual, cruel and inhuman treatment. Finding the first issue dispositive, it is not necessary to respond to the other asserted issues. Accordingly, we reverse.

FACTS
¶ 2. Gloria and Matthew Reed were married in Kemper County, Mississippi on February 25, 1981, and separated September 27, 1999. They have two children, Gregory Little who is 25, and Stella Monique Reed who is 16. On August 18, 2000, Gloria filed for divorce upon the statutory ground of habitual, cruel and inhuman treatment pursuant to Mississippi Code Annotated Section 93-5-1 (Rev. 1994).
¶ 3. Gloria claimed that for the last two months of her nineteen year marriage to Matthew she had been physically and emotionally abused. Gloria stated that up until those last two months they had a "good relationship" and that Matthew was a "good husband" and a "good father." She also testified that during this time Matthew began having affairs. She specifically accused him of being romantically involved with the next door neighbor based on seeing them talking in the yard. Matthew denied any such adulterous involvement, stating that he had merely helped the neighbor fix a lawnmower. He also made an accusation that Gloria was the one engaged in an affair.
¶ 4. Gloria cited to one specific incident of physical violence. Throughout her testimony she indicated four different dates as to when this alleged incident took place (August 1999, July 1999, the first Sunday in August 1999, and the day before Labor Day). She testified that the episode occurred when Matthew attempted to leave the house with the couple's bank records or checkbook. Gloria stated she grabbed Matthew's arm and asked him what he was doing. She testified that Matthew then shoved her across the bed, cursed her and began to choke her. She said her son came into the room and physically removed Matthew from the room.
¶ 5. Their daughter Stella was the only person to testify other than Gloria and Matthew. Stella said she witnessed the choking incident, and said her parents fought regularly. She described these fights as a "lot of screaming and stomping and stuff." Stella stated that sometimes these fights turned physical. Stella said she witnessed her father push her mother several times and saw him slap her mother on one occasion.
*568 ¶ 6. Matthew denied being physically abusive to Gloria at any time. His version of the choking incident was that when he went to get the bank book Gloria grabbed his arm, demanded to know where he was going and ripped his shirt sleeve. He stated that this incident occurred after Gloria had accused him of being involved with the neighbor. Matthew testified that Gloria several times attacked him by scratching and tearing his clothes. He also stated Gloria charged at him with a butcher knife on numerous occasions.
¶ 7. Gloria also accused Matthew of emotional abuse. She said Matthew, his brother and sister-in-law conspired to drive her from the marital home by performing "mean tricks." These mean tricks she stated included "voodoo." Her conclusion that voodoo was being performed in her house was based on the fact that strange smells were being emitted throughout the house. However, she admitted that she did not know what the practice of voodoo entailed and said she did not believe in voodoo. She stated that Matthew engaged in these activities in order to advance his romantic involvement with the neighbor. Gloria also alleged that her sister-in-law, Mary Lou Reed, plotted these evil tricks because she was jealous of her good marriage.
¶ 8. Gloria testified that Matthew emotionally abused her using verbal attacks. She said he threatened to "blow her head off" if he caught her passing the house. She also stated that Matthew verbally abused Gloria's mother. Gloria claimed that Matthew would not sleep with her and that he placed a lock on the family's food to prevent her from eating, and that he burned her clothes she left at the marital home. Matthew denied all of these allegations.
¶ 9. In the daughter's testimony she stated that she was not sure if voodoo had been practiced in their home. However, Stella testified to noticing strange smells throughout the house. As to verbal abuse, Stella first said she heard her father threaten to kill her mother only one time. She then recanted her statement and said she heard her father threaten Gloria's life several times.
¶ 10. Gloria testified that she left the marriage because she feared for her life. She stated that those two months of abuse nearly caused her to have a nervous breakdown. She said she suffered from high blood pressure and a "bad heart." Gloria said after the separation she made several attempts to reconcile with Matthew but he was unwilling.
¶ 11. In August 2000, Gloria filed for divorce based on habitual, cruel and inhuman treatment and, in the alternative, irreconcilable differences. The chancellor granted a divorce on the grounds of habitual, cruel and inhuman treatment. He stated that the wife and child's testimony of multiple assaults and multiple threats to kill were enough to entitle her to a divorce. The chancellor awarded custody of Stella to Gloria and awarded visitation rights to Matthew. Matthew was ordered to pay $285 per month in child support and $200 in alimony.

LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN AWARDING GLORIA REED A DIVORCE ON THE GROUND OF HABITUAL, CRUEL AND INHUMAN TREATMENT.
¶ 12. Matthew argues that the chancellor abused his discretion by granting Gloria a divorce on the grounds of habitual, cruel and inhuman treatment because it was granted based upon incorrect or inaccurate findings of fact. Matthew *569 contends that the court's findings indicate Gloria testified to multiple acts of violence. He asserts that Stella, the daughter, is the only one who alleged that her father had slapped her mother on a separate occasion. Matthew points out that Gloria never testified to this event. He then argues that even if the one choking event occurred, that single act alone is insufficient grounds for a divorce. He also states that the other alleged incidences involving "mean tricks," name-calling, and voodoo do not arise to the level of proof required to establish cruelty.
¶ 13. "This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact." Chamblee v. Chamblee, 637 So.2d 850, 859 (Miss. 1994). "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Id. While the chancellor's determinations of the events that preceded the divorce are findings of fact, his finding that Matthew's conduct constitutes habitual, cruel and inhuman treatment is a determination of law. Potts v. Potts, 700 So.2d 321, 322 (¶ 10) (Miss.1997). To obtain a divorce on the grounds of habitual, cruel and inhuman treatment, a petitioner must prove by a preponderance of the evidence, acts which constitute such treatment. Chamblee, 637 So.2d at 859. It is reversible error where the chancellor has employed an erroneous legal standard. Potts, 700 So.2d at 322 (¶ 10).
¶ 14. The test for the fault-based grounds of divorce of habitual, cruel and inhuman treatment was set out in 1930 by Russell v. Russell, 157 Miss. 425, 430, 128 So. 270, 272 (1930). The Mississippi Supreme Court held that the conduct must be so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health. Id. In Wilson v. Wilson, 547 So.2d 803, 805 (Miss.1989), the court held that this conduct must be done so "often that it may reasonably be said a permanent condition."
¶ 15 Prior to the legislature's addition of irreconcilable differences as a ground for divorce in 1978, the court's interpretation of the definition of cruelty was construed liberally. Fournet v. Fournet, 481 So.2d 326, 328 (Miss.1985). Divorces were often granted on grounds closer to irreconcilable differences than cruelty. Id. In Marble v. Marble, 457 So.2d 1342, 1343 (Miss.1984) the court announced a clear return to a more stringent standard. The court ruled that the cruelty required is not such as "merely to render the marriage undesirable or unpleasant, but impossible except at the risk to life and limb or health, must be real rather than imaginary, and must be clearly established by the proof." Id.
¶ 16. The facts alleged by Gloria as constituting habitual, cruel and inhuman treatment are as follows. According to Gloria in the last two months of her marriage, Matthew: 1) choked her, 2) called her dirty names, 3) engaged in affairs, 4) threatened to kill her, 5) played mean tricks on her including voodoo, 6) would not sleep with her, 7) locked up the family's food, 8) burned her clothes, and 9) verbally attacked her mother. Matthew testified that he never physically or emotionally abused his wife. He stated that these were all false accusations and these accusations arose after Gloria accused him of having an affair with the next door neighbor. He testified that Gloria was the one who was physically abusive. He said he believed she was the one who was having an affair.
¶ 17. Case law indicates that it is crucial for the chancellor to look not only at the offending spouse's conduct but also at the impact made on the plaintiff spouse. Mitchell v. Mitchell, 823 So.2d 568, 571 *570 (¶ 9) (Miss.Ct.App.2002). Thus, the Court must employ a subjective standard. Faries v. Faries, 607 So.2d 1204, 1209 (Miss. 1992). Physical violence in the marriage does not create a per se ground for a divorce under habitual, cruel and inhuman treatment. Mitchell, 823 So.2d at 571 (¶ 9).
¶ 18. In Wilbourne v. Wilbourne, 748 So.2d 184, 187(¶ 5) (Miss.Ct.App.2000), this Court affirmed the chancellor's ruling that a petition for divorce based on cruelty should be denied. The Court held that the evidence of the couple's arguments which occasionally included physical violence was insufficient to prove cruelty. Id. In Stennis v. Stennis, 464 So.2d 1161, 1161 (Miss.1985), the chancellor ruled in favor of the wife for a divorce based on cruel and inhuman treatment. The chancellor based his decision on the fact that the husband had slapped his wife, had put her in a hammerlock, and had once washed out her mouth with soap. Id. Notwithstanding this finding, this Court ruled the conduct was not sufficiently cruel or inhuman. Id.
¶ 19. "Physical violence or threats of physical violence are not necessary to prove habitual cruel and inhuman treatment." Mitchell, 823 So.2d at 571(¶ 9). The conduct may be in the form of emotional abuse; however, it must be more than mere "unkindness, rudeness, or incompatibility." Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995). Emotional abuse must fall more along the lines of habitual ill-founded accusations, insults and threats. Holladay v. Holladay, 776 So.2d 662 (¶ 64) (Miss.2000).
¶ 20. In Bullock v. Bullock, 699 So.2d 1205, 1210 (¶ 19) (Miss.1997), the Mississippi Supreme Court found sufficient evidence of cruelty where the husband kept a calendar on the refrigerator indicating when the couple had intercourse and drank heavily and became abusive while drinking. In Potts, 700 So.2d at 323 (¶ 13), the court reversed the chancellor's finding of habitual, cruel and inhuman treatment. Mrs. Potts proved that when her husband did not "get his way," he would move out of the bedroom and sleep in another room. Id. at 322 (¶ 2). She stated that his storming out of the bedroom and returning when he was ready to have sex hurt her emotionally. Id. at (¶ 3). In addition, he grabbed her once and demanded to know whether she intended to have sex with him. Id. at (¶ 4). Emphasizing that cruelty requires more than unkindness or rudeness or incompatibility, the court reversed the trial court's decision. Id. at 323 (¶ 12).
¶ 21. As a general rule the charge of cruel and inhuman treatment must be founded on conduct that is continuous and not based on one isolated incident. Ellzey v. Ellzey, 253 So.2d 249, 250 (Miss.1971). However, where that one incident is of such "a violent nature as to endanger the life of the complainant spouse" then the court will recognize the evidence as sufficient to establish cruel and inhuman treatment. Id. For example, the conduct described in Ellzey rises to the level required for establishing cruelty even though the abuse was limited to two incidences. Id. Mrs. Ellzey filed for divorce under the ground of cruel and inhuman treatment after her husband commenced to shoot at her after accusing her of stealing twenty dollars from his pocket. Id. Her case was also strengthened by the fact that twenty-five years before, Mr. Ellzey had hit her with a shovel causing injuries. Id.
¶ 22. In the course of a nineteen-year marriage, Gloria cites to one isolated physical attack and verbal threat. All of her other accusations such as Matthew's mean tricks, name-calling, and refusal to sleep with her, fall more in the categories of mere unkindness, rudeness, and incompatibility. The conduct alleged by Gloria, even *571 if true, does not rise to the necessary level to prove cruelty.
¶ 23. Whether the conduct imposed by the offending spouse warrants a divorce for cruelty depends on the conduct's effect on the suffering spouse. Mitchell, 823 So.2d at 571 (¶ 9). The negative impact upon the complaining spouse may be to their physical or mental health. Rakestraw v. Rakestraw, 717 So.2d 1284, 1288 (¶ 11) (Miss.Ct.App.1998). In Bullock, 699 So.2d at 1210 (¶ 20), the court emphasized Mrs. Bullock's medical condition. She was hospitalized for depression and had attempted suicide. Id. at (¶ 19). She also went through counseling and had bouts with hyperventilation, high blood pressure, and stomach problems as a result of her unhappiness with the marriage and her husband's demeaning behavior. Id. In Potts, 700 So.2d at 323 (¶ 13), the court, in reversing the trial court's decision, stressed that Mrs. Potts never sought treatment for the emotional problems she allegedly suffered.
¶ 24. Gloria testified that she "almost" had a nervous breakdown due to the stress endured during the last two months of her marriage. However, she never indicated that she received any treatment. She also testified that she was unhealthy due to high blood pressure and a "bad heart;" yet, she submitted no medical evidence that these alleged health problems arose due to Matthew mistreating her.
¶ 25. Mississippi rules require that "[i]n all uncontested divorce cases, except irreconcilable differences, the testimony of the Plaintiff must be substantially corroborated." Unif. Chan. Ct. R. 8.03.
The corroborative evidence will be sufficient if it proves such substantial facts and circumstances as will serve to engender in a sound and prudently cautious mind a confident conclusion that the testimony of the complainant is true in all essential particulars, and is not the exaggerated product of those wishful mental processes which passion and the consuming present desire for the relief prayed, so often present in this type of cases.
Anderson v. Anderson, 190 Miss. 508, 513, 200 So. 726, 728 (1941).
¶ 26. In addition to Gloria's testimony, Stella testified that she witnessed the choking incident and said her father had once slapped Gloria. However, Gloria testified that the physical abuse was limited to the one choking incident. Stella first said Matthew threatened Gloria's life only one time. She then changed her statement and said he had done it multiple times. Gloria's testimony only referred to one incident of a verbal attack.
¶ 27. We find insufficient evidence to support the trial court's granting a divorce on the ground of habitual, cruel and inhuman treatment and are therefore compelled to reverse and vacate that decree.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., AND SOUTHWICK, P.J., THOMAS, AND MYERS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND LEE, JJ. IRVING AND GRIFFIS, JJ., NOT PARTICIPATING.
KING, P.J., dissenting:
¶ 29. With due regard for the majority opinion, I dissent. Under the guise of deciding a question of law, the majority opinion is really re-weighing the evidence, *572 and substituting its judgment for that of the chancellor.
¶ 30. In granting the divorce, the chancellor stated:
As to the divorce, there is a conflict in the evidence. The wife and child testified as to his cruelty to her. He denies this. There are no other witnesses testifying on the subject. The wife and child both testified to multiple assaults by Mr. Reed on Mrs. Reed and to him having made multiple threats to kill her. With that evidence I find that she is entitled to a divorce on the grounds of habitual cruel and inhuman treatment.
¶ 31. "Habitual cruel and unusual treatment is defined as conduct that (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the offended party, (2) is so unnatural and infamous as to make the marriage revolting to the offended spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance." Bodne v. King, 835 So.2d 52 (¶ 20) (Miss.2003); Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993); Gardner v. Gardner, 618 So.2d 108, 113-14 (Miss.1993); Rawson v. Buta, 609 So.2d 426, 431 (Miss.1992).
¶ 32. The chancellor noted the conflicts in testimony, but resolved the issue of credibility in favor of Mrs. Reed and her daughter, and accepted as fact their testimony of habitual cruel and inhuman treatment.
¶ 33. Mrs. Reed testified that (1) Mr. Reed physically assaulted her on several occasions, (2) Mr. Reed threatened to kill her on several occasions, (3) she was afraid of him, (4) he was verbally abusive, and (5) these types of conduct, combined with other actions over a period of several months, almost caused her to have a nervous breakdown and made it impossible for her to stay with him and maintain a marital relationship.
¶ 34. The daughter, Stella Reed, gave testimony consistent with that of Mrs. Reed.
¶ 35. Stella testified that Reed (1) choked her mother, (2) slapped her mother, (3) fought with her mother on several occasions and (4) threaten to kill her mother on several occasions.
¶ 36. The testimony of Mrs. Reed and Stella is sufficient to demonstrate a pattern of conduct by Mr. Reed toward Mrs. Reed, which (1) endangered life, limb or health and created a reasonable apprehension of such danger rendering the relationship unsafe for Mrs. Reed, and (2) was so unnatural and infamous as to make the marriage revolting to Mrs. Reed and rendered it impossible for her to discharge the duties of marriage thus destroying the basis for its continuance. That is how the Mississippi Supreme Court defined habitual cruel and inhuman treatment on January 23, 2003, in Bodne v. King, supra at (¶ 20) in a decision reversing this Court's setting aside the grant of an habitual cruel and inhuman treatment divorce.
¶ 37. Because I believe Mrs. Reed met the standard stated in Bodne, I would affirm the grant of an habitual cruel and inhuman treatment divorce.
BRIDGES AND LEE, JJ., JOIN THIS SEPARATE OPINION.