IRVING, J.,
for the court.
¶ 1. Russell Brian Richardson appeals from a judgment of the Chancery Court of DeSoto County Mississippi granting his wife, Donna Marie Bruchman Richardson, a divorce on the ground of habitual cruel and inhuman treatment. It is difficult to determine exactly what Russell is contending in his pro se appeal, but as best as we can decipher, he is contending (1) that the trial court violated his right to represent himself or somehow caused him prejudice, (2) that the trial court conspired and colluded with his wife’s attorney, (3) that the trial court erred by allowing a summons to be issued for him to defend against the claim that he was guilty of habitual cruel and inhuman treatment of his wife, and (4) that the trial court erred by granting a divorce on the grounds of habitual cruel and inhuman treatment without establishing the corpus delicti necessary to render a proper judgment. We take this last assignment to mean that the evidence was insufficient to sustain the judgment of divorce on the ground of habitual cruel and inhuman treatment.
¶ 2. We find no merit in any of Russell’s issues; therefore, we affirm the trial judge.
FACTS
¶3. In a complaint for divorce, Donna accused Russell of habitual cruel and inhuman treatment. At trial, she-called four witnesses, including herself and Russell as an adverse witness.
¶ 4. Donna testified that approximately three months after her marriage, Russell told her he still loved his ex-wife and that hurt her very badly. She moved to her mother’s house but returned to the marital domicile after Russell apologized. Thereafter, things were okay for a while. Then Russell started calling her names and using vulgar and abusive language. For example, he often called her a whore, a slut, and a f-g b — h. She became depressed and started taking medication for her depression. At the time of the trial, she was taking Prozac. She testified that approximately seven years prior to trial, she became addicted to Hydrocodon and was indicted for forging a prescription for it. Russell was very unhappy about what *428 she did and did not provide her much support, telling her that she was a common criminal. Donna further testified that the summer prior to trial she had a miscarriage and that Russell was very unhappy about her getting pregnant. He told her that she got pregnant to trap him. This hurt her very much. She also testified that Russell accused her of infidelity throughout the sixteen years of the marriage and that such accusations of infidelity were even made in the presence of other persons. She stated that these accusations had caused her to become depressed and to suffer low self-esteem. She denied that she had ever committed adultery.
¶ 5. Donna testified that the final episode which led her to file for divorce occurred when she wanted to attend the funeral of one of her Black neighbors. When she spoke to Russell about her attending the funeral, he became very angry and accused her of improper motives. She decided not to attend the funeral, but he then insisted that she go, accusing her in the meantime of wanting to have a relationship with a Black man and telling her to “go get you one of those big Black d — k mother-f-rs.” This statement was made in the presence of the children, ages ten and five. She testified that the thing that really stuck out in her mind about the relationship with Russell was that he always accused her of having an affair with somebody on every job she ever had.
¶ 6. Russell denied being abusive to Donna but admitted that both of them cursed each other from time to time. He also admitted that he spent some time at the casinos as a way of dealing with the stress of the marriage.
¶ 7. Mary McArthur, Donna’s mother, testified that Russell was abusive to Donna, that he called her vulgar names in the presence of the children, as well as in the presence of other persons. She said this conduct on the part of Russell caused Donna to have low self-esteem. She did not feel comfortable visiting in Donna’s home because Russell would ignore her.
¶ 8. Donna Thomas, one of Donna’s friends, testified that Donna was intimidated by Russell. She testified that she did not feel comfortable visiting Donna because Russell would just ignore her. When she spoke to him, he said nothing. Thomas said that when Donna was around Russell, Donna would be terrified, that she could not think straight, and that she would shake and lose her concentration in the middle of a discussion. She testified that she did not think Russell ever abused Donna physically but did so mentally.
¶ 9. Russell’s case consisted of his testimony and the testimony of his ten-year-old son, Reed. Russell testified that he never physically attacked Donna, a fact that was corroborated by Donna, Thomas, and Reed. He admitted cursing Donna at times but defended his actions in this regard by asserting that Donna cursed him as well.
¶ 10. Reed testified concerning his observations of his parents’ relationship. He also testified that Donna had cursed Russell in the presence of him and his sister, that he had never seen Russell beat Donna and that he would not be happier living without Russell. Reed also testified that he knew his father loved him and that it was his desire that his father and mother would get back together.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. We first note that Donna did not file a brief. Her failure to file a brief leaves us with two options:
The first alternative is to take the appel-lee’s failure to file a brief as a confession of error and reverse. This should be *429 done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. The second alternative is to disregard the appellee’s error and affirm. This alternative should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed.
Miller v. Pannell, 815 So.2d 1117, 1119(¶7) (Miss.2002) (citations omitted). We choose the second option.

1. Abridgement of the Right of Self-representation

¶ 12. Russell refers us to that portion of the trial judge’s opinion where the trial judge characterized him as controlling and manipulative. Russell complains that the trial judge, by this description, was characterizing him as a person with standards beneath those possessed by the judge’s acquaintances. Russell also takes offense to the fact that when he made it known that he was planning to call the parties’ ten-year-old son to testify, the trial judge stated that there were some inquiries that he had to make before allowing the child to testify. Russell does not explain how any of this robbed him of the right to represent himself, or as he put it one time, to due process. He does assert, however, that “[t]he primary focus of this case must be on whether the defendant had a fair chance to present his case in his own way, without prejudice or discrimination.” He submits that a “pro se defendant is entitled to preserve actual control over the case he chooses to present to the court.”
¶ 13. Russell is not specific in explaining how he was denied due process or to what extent he was not allowed to maintain control over his case; however, we surmise that he may be referring in part to the limitations that the trial judge placed on the testimony that Reed could give. We have thoroughly examined the record in this case and do not find any instances where Russell’s right to represent himself was in any way unfairly abridged. The limitations that were placed on Reed’s testimony were proper and mandated by our rules of evidence. This issue lacks merit.

2. Conspiracy and Collusion

¶ 14. In this assignment of error, Russell asserts that “[t]he DeSoto County Chancery Court erred by conspiring and colluding with Plaintiffs attorney in a scheme or artifice to defraud defendant [in violation of] civil procedure guidelines as established in Titles 18 and 28 of the U.S.C.A. which govern Mississippi Code 9-5-137 ... and Article 4, Section I of the Constitution of the United States.”
¶ 15. Russell does not clearly explain the conspiracy or collusion. As best we can tell, Russell appears to be offended by two things: (1) his inability to make as part of the record the documents and proceedings relating to a bar complaint that he filed against Donna’s attorney for including habitual cruel and inhuman treatment as one of the grounds for divorce in Donna’s complaint, and (2) the absence of a notation on the trial court clerk’s docket of the filing of the Rule 81(d)(2) summons on July 16, 2001, the date of a hearing when, presumably, the matter of temporary relief was to be considered.
¶ 16. As to the first complaint, it is obvious that the bar proceedings were irrelevant to the issue before the trial judge. Consequently, we find no merit here. Likewise, we find no merit to Russell’s complaint about what the docket does not *430 show, although we are not entirely certain of what he complains. Suffice it to say that our review of the docket sheet contained in the record shows that both the Rule 4 and Rule 81(d) summonses were issued on July 5, 2001, and the returns were filed on July 11, 2001. They both indicate that they were served on Russell personally on July 6, 2001. Our further review of the record reveals that no hearing was commenced against Russell without adequate and timely process. This issue lacks merit.

3. The Issuance of the Summons

¶ 17. Russell contends that the trial court erred “by summoning [him] to answer for an infamous charge without presentment of indictment of a grand jury.” Apparently, Russell believes being charged with “habitual cruel and inhuman treatment” is synonymous with being charged with an infamous crime. In his defense, he cites the Fifth Amendment’s proscription of requiring a person to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury.
¶ 18. Apparently, Russell reasons that a summons should not have been issued for him because the charge laid in the divorce complaint against him can be made only via a criminal presentment or indictment. This argument is ludicrous and is utterly without merit. Russell was not, and has not, been charged with a criminal offense. The summons was properly issued on the civil complaint.
J. The Sufficiency of the Evidence
¶ 19. Russell contends that the decision of the trial judge was arbitrary, irrational and against the greater weight of the testimony and evidence provided by Russell. He takes issue particularly with the trial court’s interpretation of the phrase, “habitual cruel and inhuman treatment,” by directing us to the record where, in his opinion, the trial judge defined the phrase “habitual cruel and inhuman treatment.” Russell also correctly points out that “habitual cruel and inhuman treatment” is “conduct that endangers life, limb or health or creates a reasonable apprehension of such danger, thereby rendering the relationship unsafe for the party seeking relief, or in the alternative, is conduct so unnatural and infamous as to make the marriage revolting.”
¶ 20. At the conclusion of the evidence, the trial judge made some general observations. He talked informally for the benefit of the parties, inquiring as to whether there was any chance that they may reconcile. During this informal talk, he tried to allay Russell’s concerns about the charge of habitual cruel and inhuman treatment. This is what the trial judge said:
I need to talk about habitual cruel and inhuman treatment, because that seemed to inflame you a little bit; and you can go off on another ground. If you all could not reconcile, you could go off on another ground, joint legal custody, and you all could work out the provisions. If you could, I would be happy to approve whatever you all could approve. Habitual cruel and inhuman treatment is one of twelve grounds for divorce, as we have, historically, had in this State. Some people call it inhumane, but that’s not the way it is, at all; it’s habitual cruel and inhuman treatment. It’s the seventh ground for divorce. It’s been there since, as the old folks say, time immemorial; it’s been there, longer than anybody can remember ... It simply means, that one side has been treated to the point that it’s been adverse and detrimental to their health and well-being, and divorce should be granted on that ground ... It is not an offensive thing. *431 It might be personal to you, but it simply means, that she was treated in a manner and a circumstance that was harmful to her and adverse to her.
¶ 21. It is clear that Russell has mis-perceived the trial judge’s extended effort to offer him some comfort for the stress that Russell felt as a result of having been charged in the divorce complaint with committing habitual cruel and inhuman treatment against Russell’s wife.
¶22. The trial judge, in deciding to grant the divorce on the ground of habitual cruel and inhuman treatment, characterized the case as the most egregious name-calling case that he had heard in many years. He found that Russell used the most demeaning language toward Donna and that Russell was a controlling and manipulative person. The trial judge found that Russell had manipulated Donna to the point where she could not tolerate it any longer and that Russell’s actions had caused havoc with Donna’s physical and mental health.
¶23. We fully understand that Russell does not want to be divorced from Donna, but his desire is not the measuring stick by which we determine whether the trial judge committed error in granting the divorce. Once the trial judge has determined that the standard of proof has been met for granting a divorce on the ground of habitual cruel and inhuman treatment, we are not at liberty to disturb that finding unless we find manifest error of law or fact. Bodne v. King, 835 So.2d 52, 58(¶ 19) (Miss.2003). We have thoroughly reviewed the record, and, based on that review in light of our standard of review, we cannot say that the trial judge manifestly erred in granting the divorce on the ground of habitual cruel and inhuman treatment. There is sufficient evidence in the record to support this finding. Accordingly, we affirm the judgment of the trial court.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER JJ„ CONCUR. GRIFFIS, J., NOT PARTICIPATING.