815 So.2d 1260 (2002)
Mary Ruth BUCKLEY, Appellant
v.
Mark Rayborn BUCKLEY, Appellee.
No. 2000-CA-02057-COA.
Court of Appeals of Mississippi.
May 7, 2002.
*1261 Thomas L. Tullos, Bay Springs, attorney for appellant.
Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Mary Ruth Buckley and Mark Rayborn Buckley were granted a divorce based upon irreconcilable differences. Mrs. Buckley appeals, arguing that the chancellor erred by not awarding periodic alimony. We agree. Therefore the cause is reversed and remanded.

STATEMENT OF FACTS
¶ 2. Mark Rayborn Buckley and Mary Ruth Buckley were married in November 1979. Two children were born to them. Mrs. Buckley sought a divorce in October 1999 based on her husband's alleged adultery or alternatively based on irreconcilable differences. In November 1999, the chancery court entered a temporary order that awarded custody and control of the two children to Mrs. Buckley and outlined the visitation rights granted to Mr. Buckley. Mrs. Buckley was awarded $480 per month in child support and $245 in periodic alimony.
¶ 3. A trial was held on May 15, 2000. Shortly before it began, the chancellor announced that the parties had agreed to a divorce on the grounds of irreconcilable differences. What was for decision by the chancellor would be equitable distribution of all property and debts, alimony, and child support, including medical insurance coverage.
*1262 ¶ 4. During the trial, the parties agreed to sell the real property, satisfy the debts attached to those properties from the proceeds, and then have the chancellor divide the remainder between them. The parties also agreed that child support should be fixed at $480 per month and that the children would be covered by the state medical insurance program known as "CHIPS" with any amount not covered paid equally by both parties. The parties agreed on the distribution of all personal property and settled on a visitation schedule. The parties stipulated as to the amount of attorney's fees incurred by Mrs. Buckley. What was still unresolved was alimony and the payment of the attorney's fees.
¶ 5. At the conclusion of Mrs. Buckley's case, Mr. Buckley made a motion to dismiss the claim for alimony and for attorney's fees. The chancellor denied the motion, announcing that he would not rule on the issue of alimony until he had made a "complete and final equitable distribution" and that could not be done until the real property was sold. The trial was then recessed for several months.
¶ 6. When the trial resumed on September 12, 2000, the Buckleys agreed as to which items of personal property each party would receive and agreed on the valuation of those properties. The chancellor awarded Mrs. Buckley $1200 in attorney's fees but denied alimony. The judgment of divorce was entered on September 14, 2000. Mrs. Buckley appeals.

DISCUSSION
¶ 7. Mr. Buckley's trial counsel filed a motion to withdraw before the appeal was perfected. The chancellor granted the motion on the ground that Mr. Buckley had failed to cooperate with counsel. Nothing has been filed by Mr. Buckley or his counsel on appeal.
¶ 8. The Supreme Court has held that an appellee's failure to file a brief can be considered the equivalent of a confession of error. Reversal will occur "unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error." Selman v. Selman, 722 So.2d 547, 551 (Miss.1998). That is a lowered standard of review, but a hard look at the case by the reviewing court for plausible error is still required.

1. Alimony
¶ 9. Mrs. Buckley appeals only the chancellor's refusal to award her periodic alimony. She requests alimony of $500 per month. When alimony is not awarded at all or is considered inadequate, normally we will affirm unless "the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Because of the quasi-confession of error by the appellee, our review is not so exacting. Still, some reasonable argument of error must be presented.
¶ 10. Alimony is not a completely independent financial issue in a domestic case, in which its consideration is hermetically sealed from other financial matters. Alimony together with equitable distribution of property work together to provide for the parties after a divorce. "Therefore, where one expands, the other must recede." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). Once an equitable division of marital property has been made, the chancellor should then consider whether there is a need for alimony. Godwin v. Godwin, 758 So.2d 384, 387 (Miss. 1999). As with other of the inevitably recurring issues in divorces, the Supreme Court has announced factors that it wishes chancellors to use in structuring their decision. *1263 Twelve factors have been identified by the Court. Armstrong, 618 So.2d at 1280. We will consider each.

(1) The income and expenses of the parties
¶ 11. The chancellor found that Mr. Buckley's income, based on an amended income statement provided at the last hearing, was about $2160 per month. After deductions for taxes and for the $480 in child support payments, he would make $1200 per month. Earlier financial reports indicated that Mr. Buckley made substantially more money than the latest financial statement indicated. For example, in 1997 Mr. Buckley's tax return indicated that his profit from his various enterprises was $47,000. That is about $3900 per month, or close to twice the figure the chancellor used.
¶ 12. The chancellor stated that "we had some testimony from Mrs. Buckley previously with regard to her income and expenses, but that has obviously changed. She's moved to Sumrall. She has a new job. Her testimony is that she's making $5.35 an hour.... Monthly, that would be $927.00 gross." The chancellor found that Mrs. Buckley would pay no income taxes, but would have to pay about eighty-five dollars in Medicare and Social Security taxes. Her monthly income including the child support payment would be $1322.
¶ 13. The chancellor certainly may note what the total monthly income of the recipient spouse may be after adding in child support. Though these funds are spent in the mother's discretion, they are for the children's food, clothing, housing, and other expenses. It would be incorrect for the chancellor to decide that Mrs. Buckley's income of $1322 which had to support herself and two children could be equated to Mr. Buckley's $1200 per month for support just of himself.
¶ 14. Thus how the chancellor evaluated the relative financial positions of the two spouses after adding in the child support to Mrs. Buckley's total is the central question. Certainly the money being paid in child support has to be deducted from the amount that Mr. Buckley has available to him. However, it can be fatal error for the chancellor to combine the mother's actual income and the child support into a total sum for analytical purposes if by doing so the court loses sight that the mother is supporting not only herself with that money but the children as well. The chancellor made no specific findings on the record as to the expenses of either party but did have the financial disclosure statements of both before him and apparently accepted their accuracy.
¶ 15. Mrs. Buckley argues that Mr. Buckley has the financial ability to pay alimony as his income is much greater than hers. Mrs. Buckley's argument is based on Mr. Buckley's 1999 income and not the financial statement utilized by the chancellor. Mr. Buckley's income appears to have fluctuated considerably, with the chancellor's decision based on the lowest amount of income that had appeared in any financial statement. We find that the financial picture was distorted by that fact.
¶ 16. What is evident is that during this marriage Mr. Buckley had been the primary provider of financial support for the family. His income for most of the recent years has been much more than was the case in the final financial report on which the chancellor relied. Mrs. Buckley's ability to maintain herself without alimony in the manner to which she had become accustomed during the marriage is not apparent on this record. In addition to these shortcomings, we also must apply a less deferential review standard arising from the absence of an appellee's brief.
*1264 ¶ 17. We cannot conclude "with confidence" that no error occurred in evaluating income. What confidence we do have leads us in the direction of finding error in the analysis of this factor.

(2) The health and earning capacities of the parties
¶ 18. The chancellor found that Mrs. Buckley's wage earning capacity was not as great as that of Mr. Buckley. The chancellor made no specific finding as to the health of either party but the record did contain testimony as to each's relative health. Neither spouse had extensive formal education. Mr. Buckley left school after the tenth grade. He took welding classes at Jones Junior College for several months before he married Mrs. Buckley in 1979. Mr. Buckley has been the breadwinner for the family. Mrs. Buckley had recently been employed in minimum wage positions. It would appear that the former husband has the much greater income potential.

(3) The needs of each party
¶ 19. The chancellor made no specific finding as to the needs of each party.

(4) The obligations and assets of each party
¶ 20. The chancellor decided the issue of alimony after the distribution of the marital assets. The chancellor noted that Mrs. Buckley was awarded $31,439.49 while Mr. Buckley was awarded $17,136.93. The chancellor stated that while Mrs. Buckley's award was not "quite double" that of Mr. Buckley's that it was "certainly a great deal more."

(5) The length of the marriage
¶ 21. The chancellor found that the Buckleys' twenty-year marriage was "long-standing."

(6) The presence or absence of minor children in the home
¶ 22. The chancellor noted that there were two children and that both children would reside in the home of Mrs. Buckley.

(7) The age of the parties
¶ 23. The chancellor made no specific finding as to this factor, but the record indicates that Mr. Buckley was born in 1959 and his former wife in 1958.

(8) The standard of living of the parties, both during the marriage and at the time of the support determination
¶ 24. The chancellor found that during the marriage that "both of the parties were gainfully employed." The chancellor found that Mr. Buckley "made more money than the wife." The chancellor found that "the wife tended home, took care of the children, in addition to working outside of the home for a large part of the marriage...."

(9) The tax consequences of the spousal support order
¶ 25. The chancellor stated that because of Mr. Buckley's income that Mr. Buckley will "in all probability" pay federal income tax but no state income tax. The chancellor stated that Mrs. Buckley would not pay income taxes but would owe Social Security and Medicare taxes on her wages. The chancellor found that taking the tax implications into consideration that the income of parties "are not really that different." The chancellor then noted that Mrs. Buckley will more likely receive an earned-income-tax credit, although he also stated that the amount of the credit was unknown. However, the chancellor himself stated that "there has been no testimony really with regard to the tax implications."
*1265 ¶ 26. Mrs. Buckley notes in her brief that the chancellor did not award her any share of the tax deductions. The chancellor awarded Mr. Buckley the tax deductions for both children based on the premise that Mrs. Buckley would not earn enough to pay federal or state income taxes and to award her the deductions would waste the benefit of those deductions. The chancellor stated that "I am fairly certain that, if Mr. Buckley is allowed to claim those deductions, certainly it would prevent the diversion of those funds to the federal government, as opposed to his children, and I'd rather the money go to his children." We do not find anything to cause us to disturb this finding standing by itself. However, since we are remanding the case, this matter can be reconsidered.

(10) Fault or misconduct
¶ 27. The chancellor found that "Mr. Buckley's indiscretions greatly contributed to the break-up of this marriage; and were the cause of the separation of the parties and the divorce."
¶ 28. The chancellor did not at much length consider Mrs. Buckley's permanent medical condition that was caused by Mr. Buckley's indiscretions. A nurse practitioner testified on Mrs. Buckley's behalf regarding the effect of the venereal disease that she had contracted from her husband. Mrs. Buckley would require an annual pelvic exam and pap smear at a cost of $100, but that was something recommended for a woman of Mrs. Buckley's age regardless of medical condition. Treatments for the venereal disease would be needed whenever she had an outbreak though it was difficult to estimate how many treatments would be required. Over the previous year, the nurse had treated Mrs. Buckley either three or four times for her condition. The chancellor asked if the nurse could say "with any degree of medical certainty, what her additional cost would be;" she could not.
¶ 29. What weight the chancellor gave this permanent condition is unknown. The fact that one spouse causes another to contract an uncomfortable, embarrassing disease, which may affect the likelihood of that spouse again becoming married, must be included in the evaluations of fault and misconduct. We find nothing pre-ordained about the manner in which Mr. Buckley's infecting his wife with a venereal disease had to be measured. Whatever the chancellor awarded, Mrs. Buckley could argue that this venereal disease means that she should have been awarded more. There are few absolutes in divorce. However, under our relaxed standard of review, we cannot gain the confidence necessary that the chancellor gave proper weight to fault.

(11) Wasteful dissipation of assets by either party
¶ 30. Although not specifically labeling Mrs. Buckley's actions as "wasteful dissipation" of marital assets, the chancellor found, and Mrs. Buckley admitted, that she had withdrawn from the couple's savings account $6,733 after the separation of the parties despite the fact that Mr. Buckley was providing Mrs. Buckley with financial support by "paying the house note, the insurance, the taxes, and his car note...." The chancellor credited this amount to Mrs. Buckley when distributing the marital assets among the parties.

(12) Other factors
¶ 31. Mrs. Buckley argues in her brief that the chancellor should have considered the effect of other consequences of Mr. Buckley's indiscretions on her ability to remarry. Specifically, Mrs. Buckley argues that her former husband infected her *1266 with a venereal disease which makes it improbable that she will remarry.
¶ 32. The chancellor did not address this issue in the manner that Mrs. Buckley seeks, but he had found that Mr. Buckley was primarily at fault in causing the divorce. In distributing proceeds from the sale of the real property, Mrs. Buckley received $3,563.59 to compensate her for outstanding medical bills, a portion of which related to the medical problems caused by Mr. Buckley.
¶ 33. We also note that the chancellor was operating under the conclusion that alimony should not be awarded. Instead, equitable "distribution was made for a particular purpose and that is to avoid problems between the parties in the future by way of eliminating the need for alimony." The chancellor distributed to Mrs. Buckley about $14,000 more in marital assets; "the variance in this equitable distribution [would] eliminate the need for alimony."
¶ 34. We cannot, especially under our less deferential review standard, find that the equitable distribution of $14,000 more in marital assets takes the place of permanent alimony. A one-time distribution of a relatively small amount of property and the permanent bar to the receipt of alimony even if Mr. Buckley's income returns to his more normal levels, are a poor substitute for support.

Summary regarding alimony
¶ 35. Had Mr. Buckley filed a brief and not inferentially confessed error when he failed to do so, we would with considerable deference to the chancellor have analyzed this decision to increase the amount of equitable distribution in favor of Mrs. Buckley in order to avoid alimony. Absent a brief, however, to affirm we must find that error clearly did not occur. That clarity does not exist. We would be troubled by the chancellor's refusal to grant alimony on these facts regardless of our standard of review.
¶ 36. We reverse and remand with instructions for the chancellor to award alimony.

2. Post-Appeal Motion for Attorney's Fees
¶ 37. Mrs. Buckley filed a post-appeal motion for attorney's fees in the amount of $1,100 for preparation of her appeal. When the trial court has required one spouse to pay the other's attorney's fees below, ordinarily we award one-half that sum on appeal. This is not done "when the permanent alimony awarded to the wife gives her sufficient means to meet the obligation of counsel fees on appeal." McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). Since no permanent alimony has yet been awarded, that exception does not apply.
¶ 38. The chancery court awarded Mrs. Buckley $1,200 in attorney's fees. Therefore, the appropriate amount to award in response to the motion is $600.
¶ 39. THE JUDGMENT OF THE CHANCERY COURT OF JASPER COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS AS NEEDED TO AWARD ALIMONY. THE APPELLANT'S MOTION FOR ATTORNEY'S FEES IS GRANTED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.