853 So.2d 1279 (2003)
Ann Hatcher McLAURIN, Appellant,
v.
John H. McLAURIN, Appellee.
No. 2002-CA-00730-COA.
Court of Appeals of Mississippi.
September 2, 2003.
*1281 Lawrence Primeaux, Meridian, attorney for appellant.
Jack W. Brand, Jackson, and Roger Googe, attorneys for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
*1282 GRIFFIS, J., for the court.
¶ 1. Ann and John McLaurin were divorced on the grounds of irreconcilable differences. They filed a consent to divorce agreement and submitted several issues to the chancellor for resolution. After the chancellor divided the marital assets and entered a final judgment, Ann now appeals arguing that the chancellor erred in denying her alimony and in dividing the marital assets. Finding no error, we affirm.

FACTS
¶ 2. The McLaurins were married on August 2, 1956. The McLaurins' three children were emancipated at the time of their divorce. After forty-five years of marriage, the McLaurins separated on December 28, 2000.
¶ 3. Ann has been employed with Newton County Farm Bureau since 1968. She serves as both office manager and secretary. Ann's net income from Farm Bureau is $1, 456.21 per month. Ann has a high school education.
¶ 4. John is a retired fireman. His total retirement income is $1,788 per month. He receives an additional $250 per month in proceeds from a financed sale of timberland. After deducting health insurance, John's net income is $1,348.57 per month. John has a high school education.
¶ 5. On July 26, 2001, John and Ann executed and filed an agreement, pursuant to Mississippi Code Annotated Section 93-5-2 (Rev.1994), to consent to an irreconcilable differences divorce. The parties specifically agreed to the division of certain marital property, namely two automobiles. Debra received the 1997 Cadillac, and John received the 1998 GMC truck. Each agreed to be responsible for the costs and debt associated with their vehicle.
¶ 6. During the course of the proceedings, John and Ann agreed to sell the marital home, sell John's interest in the remaining parcels of real property that he owned jointly with B.C. Broughton, pay all associated costs of the sales, and divide the proceeds equally between them. John also agreed to provide medical coverage to Ann, under COBRA, at a cost of $338 per month for twelve months.
¶ 7. At the conclusion of the trial which was held on March 26 and 27, 2002, the chancellor rendered a bench opinion. Thereafter, on April 1, 2002, the chancellor entered a supplemental opinion in which he determined that the personal property in question was marital property because both parties were gainfully employed during the marriage and because both parties substantially contributed to the accumulation of the personal property. The personal property included items such as cash, monetary accounts, furniture and accessories, sporting goods, vehicles, tools, jewelry, appliances, and china. The chancellor then valued the assets and distributed the marital property. Ann received marital property valued at $102,581.96, and John received marital property valued at $86,611.97. Of the cash available, less outstanding liabilities, the chancellor evenly distributed Ann and John $9,747.97 each.
¶ 8. The chancellor estimated the cash that was to be received from the sale of the home was $130,000, the four parcels of land from the joint venture was $242,558, and he then determined that each party would receive one-half of the total, approximately $186,279. The chancellor considered Ann's medical coverage through COBRA, for a period of twelve months, and according to the parties' agreement awarded her the sum of $4,056 to pay the cost of that coverage.
¶ 9. The chancellor determined that John would receive total assets valued at *1283 $282,638.76 and that Ann would receive total assets valued at $302,664.75. The chancellor concluded that this division, with Ann receiving 51.7% of the marital assets and John receiving 48.3%, was equitable and would adequately provide for the needs of both parties. The chancellor decided that the division of assets was proper after taking into consideration their standard of living, their income and expenses, the non-existence of non-marital property, and the cash division to be received by each from the sale of the home and timberland. The chancellor noted that he had not, as requested by the parties during trial, "equally" divided their marital assets because this property division eliminated the need for periodic payments and other potential sources of friction between the parties. The chancellor's findings of fact and conclusions of law were memorialized in a judgment for divorce entered on April 15, 2002.

STANDARD OF REVIEW
¶ 10. This Court employs a limited standard of review of the division and distribution of property in divorces. Reddell v. Reddell, 696 So.2d 287, 288 (Miss. 1997). The chancellor's division and distribution of property "will be upheld if it is supported by substantial credible evidence." Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994). This Court will not substitute its judgment for that of the chancellor "[e]ven if this Court disagree[s] with the lower court on the finding of fact and might ... [arrive] at a different conclusion." Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978). The chancellor's findings will not be disturbed "unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).

LEGAL ANALYSIS
1. Whether the court erred in rejecting the parties' agreement at trial to equally divide the assets.
¶ 11. Ann contends that the chancellor erred by rejecting the parties' agreement, during the trial, to "equally" divide the assets. The Mississippi Supreme Court has declined to interpret "equitable" distribution to mean "equal" distribution. Trovato v. Trovato, 649 So.2d 815, 818 (Miss.1995). "It is well-settled law that the courts, when making an equitable distribution of marital property, are not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1232 (Miss.1997). `Mississippi is not a community property state ... This point cannot be stressed enough.'" Owen v. Owen, 798 So.2d 394, 399(¶ 14) (Miss.2001) (quoting Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994)). Divorcing parties have no right to equal distribution even where the parties jointly accumulated the property. Pierce v. Pierce, 648 So.2d 523, 526 (Miss. 1994). The consent to divorce agreement controlled the issue before the chancellor. In that document, the parties asked the chancellor to determine an "equitable division of the marital estate." We also recognize that the chancellor's final decision was in fact very close to being equal, as argued by Ann. Therefore, we find that the chancellor did not abuse his discretion and that this assignment of error is without merit.
2. Whether the chancellor erred in denying alimony.
¶ 12. Ann next argues that the chancellor erred in denying her demand for periodic alimony. Ann claims that the division of marital assets was unfair and has left her with little cash assets. In Mississippi, the award of alimony lies within the sound discretion of the court. Armstrong v. Armstrong, 618 So.2d 1278, 1280 *1284 (Miss.1993). When alimony is not awarded at all or is considered inadequate, normally we will affirm unless "the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Id.
¶ 13. "Alimony is not a completely independent financial issue in a domestic case, in which its consideration is hermetically sealed from other financial matters." Buckley v. Buckley, 815 So.2d 1260, 1262(¶ 10) (Miss.Ct.App.2002). Alimony together with equitable distribution of property work together to provide for the parties after divorce. Id. "Therefore, where one expands, the other must recede." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). "If the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then `no more need be done.'" Id. If an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered. Id.
¶ 14. Here, there were no non-marital assets to be considered. The chancellor found that a "deficit" did not exist because the division of marital assets was sufficient to provide for Ann's needs and that such division eliminated the need for periodic alimony payments. Therefore, in order to determine whether alimony was improperly denied, we must first look at whether the equitable division of the marital assets was sufficient to provide for both parties.
3. Whether the court erred in the division of marital property.

a. Whether the division was equitable.
¶ 15. Ann claims that the division of marital assets was inequitable and unfair because John received cash equivalent assets and she received non-cash equivalent assets, such as furniture. Ann further claims that she was entitled to half of the funds in each joint account and half of the proceeds from the timber sales, because the sales were a result of a joint asset. John received life insurance policies (valued at $40,090 and $3,594), an IRA account (valued at $5,154.97), 2001 timber sale proceeds (of $9,866), a boat (valued at $4,500), and an ATV (valued at $3,000) among other things.
¶ 16. Upon review, we note that Ann asked for the furniture. We also find that Ann received cash equivalent assets such as the American Express 401k account (valued at $62,000), the Union Planters Bank checking account (valued at $5,093), the joint account at Newton County Bank (valued at $2,116), as well as the John Deere lawn mower (valued at $300), china (valued at $200) and jewelry (valued at $2,255), in addition to the home furnishings and appliances (valued at $14,642). Ann will also receive her share of the proceeds of the sales of the marital home and the timberland, which is expected to be $214,418.50, less expenses. Therefore, we find that this claim is not supported by the record.
¶ 17. We next address whether the chancellor equitably divided the marital assets. In Henderson v. Henderson, 703 So.2d 262, 265(¶ 15) (Miss.1997), the Mississippi Supreme Court held that "[t]he chancellor's division of marital assets is governed by the principles set forth in Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994), Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), and Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994)."
¶ 18. In Johnson, the court determined that the first step is to characterize the parties' assets as marital or non-marital pursuant to Hemsley. Henderson, 703 So.2d at 265(¶ 15). In Hemsley, the court defined marital property as any and *1285 all property accumulated or acquired during the course of the marriage. Hemsley, 639 So.2d at 915. "Once the marital assets have been identified, the chancellor should value and equitably divide the marital property, employing the Ferguson factors as guidelines, in light of each party's non-marital property." Drumright v. Drumright, 812 So.2d 1021, 1024(¶ 9) (Miss.Ct. App.2001). However, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson, 639 So.2d at 929.
¶ 19. In this case, the chancellor issued a detailed supplemental opinion wherein the chancellor analyzed the issues involved and applied the applicable standards. The chancellor then entered his findings of fact and incorporated a discussion of the standards' relevant factors. Properly following the procedure set forth in Drumright, 812 So.2d at 1024(¶ 9), the chancellor first found that the only nonmarital property of consequence was the incomes earned by the parties. He found all other assets to be marital property. The chancellor valued the property according to the appraisals and then divided it in detail, awarding John assets valued at $282,638.76 and Ann assets valued at $302,664.75.
¶ 20. The chancellor found that Ann's monthly net income exceeded John's monthly net income and that Ann's portion of the division of marital property was greater than John's portion. The chancellor further found that Ann was the primary reason for the parties' separation. Therefore, after considering their standard of living, their income and expenses, fault, the non-marital property and the cash division to be received by each, the chancellor ruled that alimony was not necessary.
¶ 21. We are of the opinion that Ann has failed to establish error in the chancellor's judgment. As discussed above, in his division of assets, the chancellor is not required to divide every asset in half. The chancellor must only make an equitable distribution of all assets, which he did. "The obligation of a chancellor is not to follow some precise formula as to each individual component of distribution, alimony, and other support, but to provide equitably between the spouses in the final outcome." Welch v. Welch, 755 So.2d 6, 10(¶ 26) (Miss.Ct.App.1999).
¶ 22. Accordingly, we also find that the chancellor did not err in denying Ann alimony. Following our standard of review, we did not find that this decision to deny alimony was oppressive, unjust or grossly inadequate. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Ann's share from the division of the marital assets, $302,664.75, will adequately provide for her needs. Furthermore, the deficit created by the division of marital assets was not adverse to Ann, but to John. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." Id.; Ferguson, 639 So.2d at 929. Therefore, we find this assignment of error to be without merit.

b. Whether the court erred in giving John credit for a truck payment.
¶ 23. Ann next argues that the chancellor erred in giving credit to John for a truck payment despite the parties' agreement in the consent to divorce that John be responsible for his truck debt. The chancellor did in fact credit John with a payment made in January of 2001. The chancellor did so because the GMC truck loan was acquired during the marriage and considered a marital debt.
¶ 24. "Assets so acquired or accumulated during the course of the marriage *1286 are marital assets and are subject to an equitable distribution by the chancellor." Flechas v. Flechas, 791 So.2d 295, 299(¶ 8) (Miss.Ct.App.2001). We find this also includes marital debts. "The `course of the marriage' runs until the date of the divorce judgment, for purposes of calculating whether or not assets are marital or non-marital, and an otherwise marital asset may be classified as separate if an order for separate maintenance is entered." McIlwain v. McIlwain, 815 So.2d 476, 479(¶ 7) (Miss.Ct.App.2002).
¶ 25. The record indicates that the payment was made in January of 2001, prior to the agreed temporary judgment or the consent to divorce agreement. The record also indicates that only the consent to divorce agreement contained the language that John would be responsible for the truck's debt. The consent to divorce agreement would not take effect until the judgment of divorce, which was entered April 15, 2002. Therefore, the truck debt was properly considered a marital debt and any prior payment was properly considered by the chancellor. Finding no error, this assignment is without merit.

c. Whether the sale of real property violated the prior temporary agreed judgment.
¶ 26. Ann also argues in this assignment of error that the sale of the Gipson property violated the temporary agreed judgment which prevented the sale of any asset. The Gipson property was a parcel of real property originally owned jointly by John and B.C. Broughton. The Gipson property was sold on June 1, 2001, after the agreed temporary judgment, filed March 5, 2001. This property was sold prior to and not included in the parties' agreement to sell John's remaining interest in the joint venture with B.C. Broughton. The chancellor accounted for the sale of the Gipson property as accumulated marital property in his valuation and equitable division of the assets in the category titled, 2001 timber sales.
¶ 27. This issue was not presented to the trial court. A party who fails to raise an issue at trial waives any right to complain thereafter. Page v. Siemens Energy and Automation, Inc. 728 So.2d 1075, 1082(¶ 27) (Miss.1998). Therefore, this issue will not be addressed on appeal.

d. Whether the court erred in finding John to be a credible witness.
¶ 28. In Ann's final argument, she claims that the court erred in finding John to be a credible witness. In a bench trial, the trial judge has sole authority to determine the credibility of the witness. Bodne v. King, 835 So.2d 52, 57(¶ 18) (Miss.2003). The record does not establish error by the chancellor. Therefore, this assignment of error is without merit.
¶ 29. THE JUDGMENT OF THE NEWTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.