906 So.2d 64 (2004)
Michael William PETERS, Sr., Appellant,
v.
Catherine Lynne PETERS, Appellee.
No. 2003-CA-01907-COA.
Court of Appeals of Mississippi.
December 7, 2004.
*66 Claire Sekul Hornsby, William E. Tisdale, Biloxi, attorneys for appellant.
Dean Holleman, Gulfport, attorney for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
MYERS, J., for the Court.
¶ 1. On January 18, 2001, Catherine Lynne Peters filed for divorce in the Chancery Court of the First Judicial District of Harrison County. The court entered a temporary order on January 31, 2001, and before the trial there were various other minor proceedings, such as an amendment to the temporary order, a motion for contempt for failure to pay for appraisals, and other matters that are not currently before this Court. Amid this string of pre-trial proceedings, Catherine filed an amended complaint on November 7, 2001. A significant issue added by this amended complaint involved an allegedly fraudulent transfer incident to a loan between Michael and his brother, Steven D. Peters.
¶ 2. The amended complaint was the subject of the trial on the merits. Ultimately, on May 2, 2003, after the trial on the merits, the chancellor entered a final judgment granting Catherine a divorce on the grounds of habitual cruel and inhuman treatment, awarding her custody of the minor children, ordering child support payments, and making division of the marital assets. In addition, the conveyances between Michael and Steven D. Peters were set aside, and Steven was given a judgment against Michael for the amount of the loan that had been secured by the property the court found to be fraudulently conveyed.
¶ 3. On May 12, 2003, an addendum to judgment was entered correcting a math error in the original judgment and ordering each of the parties to be responsible for the costs of court-ordered appraisals and evaluations performed by Dr. Gasparini, a doctor brought in to conduct psychological evaluations. Also on May 12, 2003, Michael filed a motion to reconsider, or in the alternative, motion for new trial. This motion was voluntarily dismissed by Michael on July 30, 2003. On July 31, 2003, a second addendum to judgment was entered, stating that Steven D. Peters would not be taxed with any costs of experts and/or appraisers.
¶ 4. Aggrieved by the May 2, 2003 judgment, Michael filed this appeal, raising the following issues:
I. DID THE TRIAL COURT COMMIT MANIFEST ERROR IN FINDING THAT CATHERINE HAD MET HER BURDEN OF PROOF AND IN AWARDING CATHERINE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
II. DID THE TRIAL COURT ERR IN ITS AWARD OF CHILD SUPPORT?
III. DID THE TRIAL COURT ERR IN ITS DIVISION OF THE MARITAL ASSETS?
¶ 5. Finding that the chancellor did not commit manifest error or abuse his discretion, we affirm the judgment.

FACTS
¶ 6. On June 17, 1977, Catherine and Michael married. They met while working together at Sears. In addition to the job at Sears, Michael at this time also owned several rental properties in Gulfport. After marrying, they acquired several other rental properties, and Catherine left her job at Sears to manage the rental properties. In the years that followed, they continued to purchase rental properties, and *67 Michael began what would become a successful computer business. In the early years of their marriage, Michael and Catherine had two children, Michael Jr., and Stephanie. Some years later, in the early nineties, they had two more children, Alexandra and Thomas.
¶ 7. In contrast to their financial growth, Michael and Catherine experienced a gradual decline in their relationship. Eventually, the computer business began to decline as well, and before their divorce proceedings began, the computer business had been closed down. By this time Michael had begun farming operations on land that he and Catherine had purchased over a period of years. A single-wide mobile home was placed on the land, and Michael and the rest of the family eventually moved to the mobile home.
¶ 8. In the words of the chancellor's judgment:
This 24 year marriage was marked by loud arguments, verbal assaults, cursing, and an increasing escalation of physical violence which culminated in the separation of the parties.... The arguments between Mike and Cathy were loud, with each cursing the other. Mike's face would get extremely red and to on-lookers, he appeared to be in a rage. All witnesses agreed that Mike never hit or beat Cathy during these arguments, although he would shove, push and slap her, and Cathy never sought medical treatment as a result of any of the arguments. Following the arguments there were long periods of "the silent treatment" where Mike refused to speak with Cathy. He would, however, shove Cathy into the walls with his shoulders when they would pass in the hallways of their home; all four children witnessed this behavior.
¶ 9. The chancellor detailed a list of incidents beginning in 1984 and proceeding up to and beyond the time of separation. Among these incidents, which were also testified to by Catherine and corroborated by the children, the following conduct is described: Michael choking Catherine on numerous occasions after loud arguments; Michael throwing various objects at Catherine including a baseball, telephones, and television remote controls; Michael threatening to commit suicide, in front of the children; Michael accusing Catherine of committing adultery; Michael referring to his grandchild as a "bastard;" and Michael canceling all of Catherine's credit cards and closing her checking account without any notice or warning. The chancellor's listing goes into more detail, but these are a representative sample of the conduct about which Catherine complained.
¶ 10. While Michael testified to a somewhat different version of several of these events, Michael admits that many of these events happened. Michael's different version of some of the events, however, was uncorroborated and was usually contradicted by the version of events testified to by Catherine and the children. In the end, the chancellor made a credibility determination in Catherine's favor, accepting in substantial part the version of events presented by Catherine and the children.

LEGAL ANALYSIS

I. DID THE TRIAL COURT COMMIT MANIFEST ERROR IN FINDING THAT CATHERINE HAD MET HER BURDEN OF PROOF AND IN AWARDING CATHERINE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
¶ 11. Michael argues that his conduct, upon which Catherine relied in making her case for habitual cruel and inhuman treatment, was (1) too remote in time *68 to establish a causal connection between the separation and the ground for divorce, and (2) did not rise to the level of placing Catherine in reasonable apprehension of danger to life, limb or health. Catherine argues that the chancellor's judgment was supported by substantial and credible evidence and should, therefore, be affirmed.

STANDARD OF REVIEW
¶ 12. We review a chancellor's decree of divorce for manifest or clear error as to law or fact. Southerland v. Southerland, 875 So.2d 204, 206(¶ 5) (Miss.2004) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999)); Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000); Chamblee v. Chamblee, 637 So.2d 850, 859 (Miss.1994). The sufficiency of the evidence is determined by the chancellor, who sits as finder of fact and makes determinations as to the weight and credibility of the evidence. Fisher, 771 So.2d at 367(¶ 8); Chamblee, 637 So.2d at 859. Regarding these findings of fact by the chancellor more specifically, we have said, "This Court views the facts of a divorce decree in a light most favorable to the appellee, and may not disturb the chancery decision unless this Court finds it manifestly wrong or unsupported by substantial evidence." Rawson v. Buta, 609 So.2d 426, 429 (Miss.1992). Thus, our standard of review of a divorce decree is very deferential, and we will not reverse in the absence of manifest error. Id.; New v. Comola, 881 So.2d 369, 372(¶ 8) (Miss.Ct.App.2004).

DISCUSSION
¶ 13. To be granted a divorce on the grounds of habitual cruel and inhuman treatment, the offended spouse must show:
[C]onduct that either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Richard v. Richard, 711 So.2d 884, 889 (¶ 22) (Miss.1998) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993)). This showing must be made by a preponderance of the credible evidence, and this showing must demonstrate more than mere incompatibility, lack of affection, rudeness, or unkindness. Daigle, 626 So.2d at 144.
¶ 14. The chancellor made extensive findings of fact and conclusions of law, which are laid out in the forty-six page judgment of divorce entered after the trial below. Our review of the trial transcript and the various other documents in the record indicates that these findings of fact and conclusions of law are not manifestly wrong or clearly erroneous.
¶ 15. The chancellor states the correct legal standards for granting a divorce on the grounds of habitual cruel and inhuman treatment, in that he cites to the following: Miss.Code Ann. § 93-5-1 (Rev.1994); Bodne v. King, 835 So.2d 52, 58 (¶ 20) (Miss.2003); Holladay v. Holladay, 776 So.2d 662, 677 (¶ 64) (Miss.2000); Boutwell v. Boutwell, 829 So.2d 1216, 1220 (¶ 14) (Miss.2002); Fisher v. Fisher, 771 So.2d 364, 368 (¶ 10) (Miss.2000); Morris v. Morris, 783 So.2d 681, 688 (¶ 22) (Miss.2001); Talbert v. Talbert, 759 So.2d 1105, 1110 (¶ 15) (Miss.1999); Faries v. Faries, 607 So.2d 1204, 1209 (Miss.1992). None of these cited authorities have been overruled, and all correctly state the legal standards regarding habitual cruel and inhuman treatment and the burden of proof for this ground of divorce. Thus, in making its decision, the chancellor considered the correct and applicable legal standards.
*69 ¶ 16. As noted above, the chancellor also made extensive findings of fact. Through these findings of fact, the chancellor illustrated a continuous pattern of conduct that could safely be called unnatural and infamous, beginning sometime in 1984 and continuing up to and beyond the separation in late 2000.
¶ 17. Our review of the evidence in the record does not reveal any manifest or clear error in these findings of fact. While the incidents described in these findings were based largely upon the testimony of Catherine, there was corroborating testimony presented by the children of the parties. In addition, Michael concedes in his brief that he was sometimes abusive towards Catherine before 1994, and that if Catherine had filed for divorce in 1994, there is a good possibility that she would have had a viable claim for habitual cruel and inhuman treatment. He does contest Catherine's version of the events after 1994, but in this regard, the chancellor made a credibility determination that we may not disturb in the absence of manifest error. Fisher, 771 So.2d at 367(¶ 8); Chamblee, 637 So.2d at 859. Given our review of the record, we can find no manifest error in the chancellor's rejection of Michael's version of the post-1994 incidents.
¶ 18. We now consider Michael's more specific arguments on appeal, namely that (1) there was no causal connection between Michael's alleged conduct and the separation, and (2) that Michael's alleged conduct did not place Catherine in reasonable apprehension of danger to life, limb or health. Each of these arguments will be examined in turn.
¶ 19. First, Michael tries to make much of the fact that many of the incidents described by Catherine occurred several years in the past, going back to 1994. Because of this remoteness in time, Michael argues, there was no causal connection between his conduct and the separation.
¶ 20. We agree that our earlier cases on this issue held that the evidence must establish a rather strict causal connection between the cruel and inhuman treatment and the separation of the parties. Chamblee, 637 So.2d at 859; Fournet v. Fournet, 481 So.2d 326, 329 (Miss.1985). However, subsequent case law has somewhat lessened this requirement.
¶ 21. For example, in the case of Rakestraw v. Rakestraw, 717 So.2d 1284 (Miss.Ct.App.1998), we held:
Absence of proof of proximate cause does not in logic negate the reality of habitual cruel and inhuman treatment, which may indeed have been a proximate cause of harm to the health and physical well being of the plaintiff (as distinguished from the actual cause of the separation). The chancellor's primary inquiry must in justice be into the ground for divorce. That inquiry requires a dual focus: upon the conduct of the offending spouse and the impact of that conduct upon the plaintiff. If the requisite impact upon plaintiff is proved, there is little reason why we should arbitrarily dismiss because of the proximate cause of separation rule which no legislature has mandated.
Rakestraw, 717 So.2d at 1288 (¶ 11) (quoting Bias v. Bias, 493 So.2d 342, 345 (Miss.1986)).
¶ 22. The Rakestraw court goes on to hold that a "pattern of psychological abuse as well as gross neglect, financial and otherwise, resulting in persistent emotional stress" that is demonstrated by credible evidence can "establish the necessary link between [the offending spouse's] behavior and [the non-offending spouse's] emotional deterioration which led to [the non-offending *70 spouse's] leaving the marriage." Rakestraw, 717 So.2d at 1288 (¶ 12). In the context of the Rakestraw case, that pattern was established over a period of several years. Id. at 1285-86 (¶¶ 2-6).
¶ 23. A similar pattern appears from the record of the case sub judice. However, the facts of this case are even more compelling than those of Rakestraw, in that this case involved more incidents over a longer period of time, and many of these incidents caused damage to Catherine's physical as well as emotional health.
¶ 24. The case of Richard v. Richard, 711 So.2d 884 (Miss.1998), echoes the holding of Rakestraw:
We no longer require that a specific act must be the proximate cause of a separation before a divorce may be granted on grounds of habitual cruel and inhuman treatment. It is, instead, habitual or continuous behavior over a period of time, close in proximity to the separation, or continuing after a separation occurs, that may satisfy the grounds for divorce.
Richard, 711 So.2d at 890 (¶ 23).
¶ 25. Therefore, we find no merit in Michael's argument that we should reverse because there was no causal connection between the separation and the cruel and inhuman conduct. Not only do we find that the causal connection requirement is not as strict as Michael urges, but we also note that we would be hard pressed to find manifest error in this case even applying a stricter requirement of causal connection. Indeed, given what we find in the record, we are at a loss to know what could have caused the separation other than the conduct about which Catherine complains. We hold that the record does not reflect any manifest error in the chancellor's finding that there was a causal connection between the conduct and the separation.
¶ 26. Second, Michael argues that the conduct Catherine complains of did not rise to the level of placing her in reasonable apprehension of danger to life, limb or health. This argument overlooks the fact that, as already noted above, cruel and inhuman treatment may be shown in one of two alternative ways: (1) by showing conduct that "endangers life, limb, or health or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief" or (2) by showing conduct that "is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance." Richard, 711 So.2d at 889 (¶ 22) (emphasis added).
¶ 27. Based upon this analysis, therefore, even if Catherine failed to show conduct that created a reasonable apprehension of danger to life, limb or health, she could still be entitled to a divorce on the grounds of habitual cruel and inhuman treatment if she succeeded in showing conduct that was "so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage." Id. Thus, we find no merit in Michael's second argument on this issue.
¶ 28. Having found no merit in Michael's arguments and having found no manifest error, we affirm the judgment of the chancellor granting Catherine a divorce on the grounds of habitual cruel and inhuman treatment.

II. DID THE TRIAL COURT ERR IN ITS AWARD OF CHILD SUPPORT?
¶ 29. Michael argues that the chancellor erred in its award of child support by *71 failing to take into account various factors that would have reduced Michael's income for purposes of calculating the amount of child support. Michael argues further that, due to this failure, the amount of child support awarded actually exceeded the statutory guidelines set forth in Mississippi Code Annotated § 43-19-101 (Rev.2000) without any substantive reason articulated in accordance with Mississippi Code Annotated § 43-19-103 (Rev.2000). He argues further that the chancellor failed to make a written finding of reasonableness pursuant to § 43-19-101(4) (Rev.2000), given that Michael's adjusted gross income exceeded $50,000. Catherine argues that any inaccuracies in the amount of Michael's income used to calculate the award of child support were brought about by Michael's own failure to candidly and accurately state his income during the proceedings below. Catherine argues further that, in any event, the amount of child support awarded, even if inaccuracies in Michael's income are conceded, was much lower than what the chancellor could have awarded, given the evidence presented at trial.

STANDARD OF REVIEW
¶ 30. "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was used." Southerland v. Southerland, 875 So.2d 204, 206(¶ 5) (Miss.2004) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999)). More specifically we have held, "In cases involving child support, we afford the chancellor considerable discretion, and his findings will not be reversed unless he was manifestly in error or abused his discretion." Southerland, 875 So.2d at 208 (¶ 12).

DISCUSSION
¶ 31. First, Michael argues that the chancellor should have taken into account various factors that would have reduced his adjusted gross income. The record, however, reveals that Michael gave conflicting reports about his income, debts, expenses, and the like, and because of Michael's failure to be completely candid, the chancellor was required to figure an amount based upon the credible evidence available at trial. Given the evidence in the record, we can not say that the child support award was clearly erroneous or that the chancellor abused his discretion.
¶ 32. We also agree with Catherine's argument that, given Michael's lack of candor in describing his financial condition, he can hardly complain now about possible inaccuracies in the income amount used by the chancellor in computing the child support award. Dunn v. Dunn, 695 So.2d 1152, 1156-57 (Miss.1997); Grogan v. Grogan, 641 So.2d 734, 742 (Miss.1994). We do not believe that Michael can properly complain to this Court of possible inaccuracies that he himself helped to create. Id.
¶ 33. Second, Michael makes the somewhat tenuous argument that the amount of child support "actually" exceeded the statutory guidelines by as much as twenty-five percent, because the court assigned an inaccurate adjusted gross income to Michael. This argument rests upon the false assumption that the chancellor's factual findings on Michael's adjusted gross income were clearly erroneous or manifestly wrong. This argument upon its face lacks merit, because its validity depends upon the validity of his first argument, which we have found to be without merit.
¶ 34. In order to accept Michael's argument here, we would have to accept Michael's proposed adjusted gross income *72 figure, and to accept that proposed figure, we would have had to find that the chancellor's adjusted gross income figure was manifestly erroneous. Southerland, 875 So.2d at 208 (¶ 12). As stated above, after reviewing the record, we do not find the chancellor's figures to be clearly erroneous, given the evidence presented at trial; therefore, we are unmoved by Michael's argument that the child support amount "actually" (that is, if we were to accept his figures instead of the chancellor's) exceeded the statutory guidelines.
¶ 35. Third, Michael argues that the chancellor did not comply with the requirements of Mississippi Code Annotated § 43-19-101(4), and he urges this Court to reverse and remand in order for the chancellor to make more specific findings on this issue. Mississippi Code Annotated § 43-19-101(4) requires a written finding that the application of the statutory guidelines to an income in excess of $50,000 was reasonable. Miss.Code Ann. § 43-19-101(4); Parker v. Mississippi Dept. of Human Services, 827 So.2d 18, 20(¶ 6) (Miss.Ct.App.2002).
¶ 36. The chancellor declared in his written judgment, "The Court recognizes that the gross annual income stated herein exceeds the $50,000.00 recited by the statute. At this point in time, however, the Court sees no reason to deviate from the statutory child support guideline of twenty percent of the adjusted gross income." Michael argues that this statement was not enough to satisfy the requirements of § 43-19-101(4). We disagree. While this statement is rather succinct, it is nonetheless a written finding of reasonableness. Moreover, especially when this statement is taken in the context of the chancellor's opinion as a whole, it is apparent why the chancellor, given the facts and circumstances of the case, saw "no reason to deviate from the statutory guidelines." We can find no manifest error or abuse of discretion in the award or the amount of child support, and we find that the chancellor complied with the written finding requirement of § 43-19-101(4). The chancellor's judgment is, therefore, affirmed.

III. DID THE TRIAL COURT ERR IN ITS DIVISION OF THE MARITAL ASSETS?
¶ 37. Michael argues that the trial court committed various errors in its valuation and division of the marital assets. Catherine argues that Michael cites no legal authority in support of his argument and that, therefore, we need not consider this issue on appeal. Catherine argues further that, in any event, the chancellor made an equitable distribution of the marital assets that was not manifestly wrong or clearly erroneous.

STANDARD OF REVIEW
¶ 38. Our standard of review of the division and distribution of property in a divorce is limited, and we will affirm the chancellor's decision if it was supported by substantial credible evidence. McLaurin v. McLaurin, 853 So.2d 1279, 1283 (¶ 10) (Miss.Ct.App.2003). Moreover, we have held that even if we disagree with the chancellor's findings of fact, we will not substitute our judgment for the chancellor's. Id. "The chancellor's findings will not be disturbed `unless the Chancellon was manifestly wrong, clearly erroneous on an erroneous legal standard was applied.'" Id. (quoting Bell v. Parker, 563 So.2d 594 596-97 (Miss.1990)).

DISCUSSION
¶ 39. Catherine correctly points out that Michael has cited to no legal authority in support of his arguments on this issue. Instead, he re-cites and re-visits various facts that were heard at the *73 trial. He also alleges various factual inconsistencies in the trial court's ruling, but, as already stated, we can find no legal authority cited in his discussion of this issue.
¶ 40. It is well established in our jurisprudence that assignments of error not supported by legal authority need not be considered by this Court. Jones v. Howell, 827 So.2d 691, 702 (¶ 40) (Miss.2002). Therefore, we decline to consider this issue here, as it lacks any legal authority to support it.
¶ 41. The judgment of the chancellor classifying and making equitable distribution of the assets of the parties is affirmed.
¶ 42. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.