JAMES, J.,
Concurring in part and Dissenting in part:
¶ 29. I agree with the part of the majority opinion that denies the supersedeas bond. Matthew is primarily responsible for the monetary judgment, and therefore he cannot sign as a surety for the appeal bond. Matthew has not satisfied the requirements of Mississippi Rule of Appellate Procedure 8(a), and therefore, he is not entitled to a supersedeas bond. As to the calculation of child support and the equitable distribution of marital assets and debts, I respectfully dissent.
¶ 30. In the case at hand, the trial court essentially adopted the proposed findings of fact and conclusions of law submitted by Dana. The Mississippi Supreme’ Court has previously held that “[w]here the chancellor adopts, verbatim, findings of fact and conclusions of law prepared by a party to the litigation, this Court analyzes such findings with greater care[.]” Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995) (citing Omnibank of Mantee v. United S. Bank, 607 So.2d 76, 83 (Miss.1992)).
¶ 31. Further, “the deference normally afforded a chancellor’s findings of fact is lessened.” Id. This does not mean that the. appellate court is the fact-finder, nor does it change our. standard of review. This means that the Court will take a closer look to make sure that our law is followed as interpreted by our courts. Chancellors are charged with the duty of being independent fact-finders, and the adoption of an opinion written by one of the attorneys is not the finding of the chancellor based on his independent reasoning, even though the chancellor may have a similar opinion.,
¶ 32. In Bluewater Logistics, LLC v. Williford, 55 So.3d 148, 157 (¶ 32) (Miss.2011), the supreme court announced that the standard of review has not changed. The court stated:
If we are to adopt and apply a “heightened-serutiny” standard, simple fairness and justice require[] us to publish that standard — in more than name — to the bench and bar. Arid because that has not been done — and because we decline to do it today-i-we shall continue to ap *393 ply the familiar abuse-of-discretion-standard to a trial judge’s factual findings, even where the judge adopts verbatim a party’s proposed findings of fact.
Id. The court also stated: “when a chancellor adopts verbatim, or nearly verbatim, a party’s proposed findings of fact, our precedent provides that we should apply ‘heightened scrutiny’ to the chancellor’s finding of fact. This rule is fairly well-settled and accepted. Yet our precedent provides little guidance as to how we are to comply with our duty to ‘heighten’ our scrutiny[.]” Id. at 156 (¶ 26). Also, it is important to'note that the judge and the attorney have different duties. It appears that fairness would be best promoted if these duties remained separate.
¶ 33. However, in Bluewater, the court did not overturn the previous precedent of allowing heightened scrutiny. Therefore, the caselaw supporting heightened scrutiny is still good law. Further, it should be noted that in Bluewater, the court did not have the two documents to compare, but the supreme court saw fit to engage in an in-depth discussion of the standard of review. Therefore, there is nothing in this separate opinion that suggests that the standard of review has changed.
¶ 34. Here, the record contained copies of the Appellee’s proposed findings of fact and the chancellor’s findings of fact that were adopted verbatim from the Appellee’s findings of fact, and I have had an opportunity to examine them thoroughly. My opinion is based on the law not being specifically followed as interpreted by our supreme court, and the standard of review is not dispositive in this case. My view aligns with the separate opinion in Blue-water, which concurs in part and in result, and states that “[heightened scrutiny refers to appellate review with a heightened sensitivity to the possibility of error.... In other words, the Court still defers to the chancellor’s findings but with'a closer examination of the record.” Id. at 165 (¶ 80) (Waller, C. J., concurring in part and in result)..
¶ 35. The record indicates that Matthew’s adjusted gross income from Jones County Junior College is $2,618.04 per month. The trial court found that Matthew receives additional income from farming operations. However, there is no documentation that . provides for the amount per month he receives from farming. It is also unclear whether Matthew still receives this supplemental income from farming.
¶ 36. Matthew argues that the appropriate amount for his child-support obligation for the two minor' children is $523.61, which is twenty percent of his net income. The trial court ordered Matthew to pay $600 per month. The trial court based the child-support award on the net income .Matthew receives from Jones County Junior College and cash received from the farming operation. However, there is nothing" in the record to establish the amount of income received from the farming' operation. The trial court imputed an undetermined amount of income to Matthew.
¶ 37. Matthew argues that a deviation from the child-support guidelines requires a written finding on the record explaining the need for such deviation. Miss.Code Ann. § 43-19-101 (Supp.2014). The. criteria for finding an appropriate .deviation are as follows:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child.
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents’ incomes or expenses.
*394 (e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally b.een met within the family budget even though the fulfilling of those needs will cause.the support to exceed the proposed guidelines.
(g) The particular shared' parental arrangement, such as where the noncustodial parent spends a great‘deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent; or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent’s homemaking services.
(h) Total available"assets of the obligee, obligor and the child.
(i) Payment by the obligee of child care expenses in order that the obligee may seek or retain employment; or because of the disability of the obligee.
(j) Any other adjustment which is needed to achieve an equitable result which may include, but not.be limited to, a reasonable and necessary existing expense or debt.
Miss.Code. Ann. § 43-19-103 (Supp.2014).
¶ 38. "The child support award guidelines- are ‘a rebuttable presumption-in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state.’” Grove v. Agnew, 14 So.3d 790, 793 (¶ 7) (Miss.Ct.App.2009) (quoting Miss.Code. Ann. § 43-19-103). Thus, “[i]n. the absence of specific findings of fact to support a deviation from the child support guidelines, the chancellor’s award is not entitled to the presumption of correctness under the statute.” Osborn v. Osborn, 724 So.2d 1121, 1125 (¶ 20) (Miss.Ct.App.1998).
¶ 39. I find no specific finding of fact to support deviation. Instead, there is merely an order for Matthew to pay a seemingly arbitrary amount of $600. The ordered amount of support is almost twenty-three percent of his net income. There is no mention of any extraordinary circumstances that would warrant a departure from the child-support guidelines. Although the children attend private school, the maternal grandparents agreed to -pay the tuition. Accordingly, I find that the trial court abused its discretion in deviating from the child-support guidelines without specific on-the-record findings. The majority opinion .supports:the chancellor’s award of child support without a finding on the record of deviating from the statutory guidelines for child support. The majority opinion bases its findings on the record as a whole. However, the record as a whole does not support the specific monetary award of $600 per month.
¶ 40. Matthew next asserts that the trial court erred in its, division of marital assets and debts by awarding Dana the bulk of the marital assets and assigning Matthew all the marital debt. In the final judgment of divorce, the trial court prohibited either party from selling- any of their real property until, the youngest child turned twenty-one years of age. In the meantime, Matthew must continue to pay the mortgage, maintenance costs, and taxes on all three parcels of property, including the marital home. Matthew argues that this prohibition on selling the real property is inequitable, because the court did not take into consideration the amount of interest that Matthew would be paying over the course of the prohibition, which diminishes his portion of the award.
¶ 41. The following, steps must be taken in the distribution -of marital property: “(1) classify the- parties’ assets as marital or separate; (2) value those assets; and *395 (3) equitably divide the marital assets pursuant to the Ferguson factors.” Faerber v. Faerber, 13 So.3d 853, 858 (¶ 18) (Miss.Ct.App.2009) (citing Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994)). In Ferguson, the Mississippi Supreme Court identified multiple factors that should be taken into consideration when determining the equitable division of marital property.
¶42. Here the trial court awarded Dana $283,226.87[2] of the marital-property. Matthew was awarded marital property totaling $237,903.61. The trial court then awarded Dana half of Matthew’s Public Employees’ Retirement 'System account and deferred-compensation account, which was an additional $53,911.47, bringing the total award for Dana to $337,138.34 and Matthew’s total award to $183,992.14.
¶ 43. Further, the trial court ordered that all the real property be sold when the youngest child turns twenty-one years of age. At that time, Dana would receive seventy-five percent "of the proceeds from the sale of the house, and Matthew would receive twenty-five percent of the proceeds. Likewise, when the real property awarded to Matthew is sold, Matthew would receive seventy-five percent of the proceeds from the sale and Dana would receive twenty-five percent. The taxes, insurance, and maintenance for all the real property would be Matthew’s responsibility. In terms of marital debt, Matthew was ordered to pay the Regions bank loan of $148,554.63, the Regions Bank farm loan of $68,438.21, and the AES loan of $8,479.95. The total amount of debt Matthew is ordered to pay is $225,472.79, not including any interest on any of the loans. This leaves Matthew with a deficit of $41,480.65.
¶ 44. The trial court reasoned that Matthew is in a better position to pay the debt than.Dana, due to his level of education, current work schedule, and farm equipment. Matthew has a Ph.D. in biology and three other degrees, which greatly increases his earning capacity. . In determining the ability of Dana to pay any of the marital debt, the trial court failed to consider that Dana has a .college degree and is currently working, earning $11 an hour. Dana is capable of obtaining employment that pays more money and is equal to her level of education. Also, Dana spent part of the marriage as a wage-earning spouse apd had only been out of the workforce since the birth of their youngest child in 2008.
¶ 45. Upon considering the Ferguson factors, “the- chancellor should determine whether the equitable division of the marital property, considered in light of the non-marital assets, adequately provides for both parties.” Jenkins v. Jenkins, 67 So.3d 5, 9 (¶ 11) (Miss.Ct.App.2011). Matthew is not adequately provided for in the property division as set forth in the final judgment of the, trial .court. The amount of payments the trial court required Matthew to pay each month exceeds his $2,618.04 salary each month. Our .supreme court has stated that when determining property division, “[fjairness is the prevailing guideline[.]”. Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009).
¶ 46. After the equitable division of property is determined, the trial court must then determine whether or not alimony is appropriate. In Ferguson, the Court stated that “[a]ll' property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together.” Ferguson, 639 So.2d at 929.
*396 ¶ 47. The trial court conducted a Ferguson analysis as well as an Armstrong[3] analysis. The ultimate conclusion was that alimony was not needed because the trial court divided the marital assets and liabilities as previously discussed. The trial court; however, arrived at an inequitable result concerning the property division.
¶ 48. The trial court opined that Matthew may have acted in' bad faith in terms of his financiai situation and' his dissipation of marital assets. Although the farni-ing equipment was sold, Matthew redueéd the marital debt by paying student-loan debt down aggressively. Matthew also testified that he acted under the advicé of his former counsel. The trial court concluded, that by selling farming equipment and securing a home-equity line of credit, Matthew increased the liabilities of the marriage, and that Matthew’s actions constituted a dissipation of assets.
¶ 49. The trial court found, however, that the line of credit and sale of farm equipment were used to pay for vehicles, decrease” debts, and further Matthew’s farming operation, In the past; this Court has found that “[w]ith respect to the dissipation of marital assets, ... ordinary and reasonable living expenses used during separation generally do not constitute a dissipation of marital assets.” Faerber, 13 So.3d at 862 (¶ 34). I am of the opinion that obtaining the home-equity line of credit and selling of farming equipment do not constitute dissipation of assets.
¶ 50. I would find that the. trial court abused its discretion in determining the division of marital assets and. debts. The majority opinion supports the chancellor’s division of-marital assets to avoid payment of alimony. However, this is not a justification when inequitable results are produced.
¶ 51. It is important to note in the present case’-that the trial court considered that Dana was entitled to alimony. Here, the parties were married for twelve years, prior to the divorce, and two children were born to--the marital union. In the case of Buckley v. Buckley, 815 So.2d 1260, 1266 (¶ 34) (Miss.Ct.App.2002), the Court found that the-trial court erred in denying alimony even though the wife was awarded more property in equitable division than the husband. The . court, citing Armstrong, stated, when alimony is not awarded at all or is considered inadequate, normally we will affirm unless ‘the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion’ ” Id. at 1262 (¶ 9). The Court in quoting Armstrong further stated, “alimony is not a completely independent financial issue in a domestic case, in which consideration's hermetically sealed from other financial matters. Alimony together with equitable distribution of property work together, to provide for the parties after a divorce. Therefore where one expands, the other, must recede.” Id. at (¶ 10).
¶ 52. The division of property in this case has an oppressive result for Matthew, and it evidences an abuse of discretion. An award of alimony can be modified upon a showing of a material change in circumstances. Russell v. Russell, 148 So.3d 1052, 1054 (¶ 7) (Miss.Ct.App.2014). Alimony can also be terminated upon the death of the obligor or the remarriage of the obligee. Id. However, absent fraud or a contractual provision stating otherwise, neither a property settlement agreement or judgment nor lump-sum alimony can be modified. Smith v. Little, 834 So.2d 54, 60 (¶ 23) (Miss.Ct.App.2002) (citing Norton v. Norton, 742 So.2d 126, 129 (Miss.1999)). Unless the judgment awarding child sup *397 port and equitable distribution in this case is reversed and remanded, it will create prolonged oppressive results for Matthew. However, child support can be modified upon a showing of a substantial and material change of circumstances. Evans v. Evans, 994 So.2d 765, 770 (¶ 16) (Miss.2008) (citing Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992)).
¶ 53. The trial court abused its discretion and reached an inequitable result in terms of establishing child support and dividing marital property. Matthew was ordered to pay almost twenty-three percent of his income without an explanation from the trial court as to why a deviation from the child-support guidelines was necessary. The trial court deviated from the child-support guidelines without a proper on-the-record- finding. Matthew was ordered to pay all of the marital debt, while Dana was awarded all of her assets free and clear from debt,
¶ 54. I would therefore affirm the trial court’s judgment on the denial of the su-persedeas bond and reverse and remand as to the issue of child support and equitable distribution of marital assets.
IRVING, P.J., JOINS THIS OPINION IN PART.

. The value of the property, both real .and personal, is the value at the time of the final judgment.

. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).